UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IDEAVILLAGE PRODUCTS CORP.,

                Plaintiff,

      v.

BLING BOUTIQUE STORE D/B/A
CASH29784729, et al.,

                Defendants.

16-CV-9039 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, District Judge:

The Court has reviewed the several Defendants' (collectively, "Moving Defendants") Motion to Dismiss for *Forum non Conveniens* (Doc. No. 29) and Moving Defendants' Motion to Release Frozen Funds ("Mot. to Release") (Doc No. 36). This Court DENIES the Motion to Dismiss for *Forum Non Conveniens* and DENIES the Motion to Release Frozen Funds.

    **I.**        **INTRODUCTION**

Plaintiff Ideavillage Products Corp. ("Plaintiff") owns the trademark to Copper Fit, a line of products designed to relieve muscle and joint pain. (Complaint ¶ 28 (Doc. No. 5)). Plaintiff also owns registered and unregistered copyrights related to packaging and marketing materials for its Copper Fit products, (*id.* ¶ 33), which Plaintiff markets and sells primarily online and through television. (*Id.* ¶ 38). Plaintiff brings this action against Defendants Bling Boutique Store, et al., for manufacturing, marketing, selling, etc. counterfeit versions of Plaintiff's Copper

1

Fit products. (*Id.* ¶ 1). The Complaint makes eight claims against Defendants: trademark counterfeiting, trademark infringement, and false designation of origin under the Lanham Act; copyright infringement under the Copyright Act; as well as violation of deceptive acts and practices, false advertising, unfair competition, and unjust enrichment under New York state law. (*Id.* ¶¶ 69−128).

## II. PROCEDURAL HISTORY

This Court granted Plaintiff's Motion for a Preliminary Injunction on December 8, 2016 (Doc. No. 3) ["PI Order"], under Federal Rule of Civil Procedure 65 and Section 34 of the Lanham Act, to remain in place throughout the pendency of the litigation. The Preliminary Injunction enjoins all Defendants from manufacturing, importing, marketing, and selling, etc. any goods bearing Copper Fit, Plaintiff's trademark, or counterfeit versions of Copper Fit. The Preliminary Injunction also included an Asset Freeze Order, which restrains the transfer or dissipation of assets in Defendants' bank accounts. (*See* PI Order ¶ 2). On December 19, 2016, the Clerk of Court issued an entry of default due to Defendants' failure to answer the Complaint. (Doc. No. 21). On December 29, 2016, Moving Defendants filed a Motion to Vacate the Entry of Default and a Motion to Dismiss for *Forum non Conveniens*. (Doc. No. 29). The Court vacated the entry of default on February 8, 2017, in light of the Moving Defendants' assertion that the failure to appear or answer was unintentional, and due to the short time frame Moving Defendants were given to appear and respond. (*See* Doc. No. 33). On February 23, 2017, Moving Defendants filed a Motion to Release Frozen Funds (Doc. No. 36). This Opinion addresses both the Moving Defendants' Motion to Dismiss and the Motion to Release Frozen Funds.

### III. MOTION TO DISMISS FOR *FORUM NON CONVENIENS*

Moving Defendants ask the Court to dismiss the Complaint based on *forum non conveniens*, which this Court has the discretion to do, if another forum would be a more efficient venue to litigate this case. *See Am. Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994). However, the doctrine of *forum non conveniens* "has continuing application [in federal courts] only in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigational convenience best." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (internal citations and quotation marks omitted). The alternative forum Defendants choose is the District of New Jersey, which is not an international forum.

Alternatively, the proper course of action would be for this Court to transfer the case to a sister federal court, under 28 U.S.C. § 1404(a), if that court is a more convenient venue for the litigation. *Id.* The moving party bears the burden to demonstrate that transfer is warranted "[f]or the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The Second Circuit guides district courts, in determining whether to transfer a case, to consider factors such as: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106−07 (2d Cir. 2006) (quoting *Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002) (Rakoff, J.)).

Moving Defendants argue that Plaintiff should not be afforded deference for its choice of

forum in the Southern District, because Plaintiff is incorporated in New Jersey. Nevertheless, the Court finds that the balance of factors does not warrant a transfer to the District of New Jersey.

First, Plaintiff chose to bring this action in the Southern District of New York. Moreover, Plaintiff's New Jersey headquarters are a mere 50 miles from the Southern District; thus, litigating in the District of New Jersey would offer marginal, if any, convenience over litigating in the present forum. Second, Moving Defendants fail to identify witnesses for whom it would be more convenient to appear in the District of New Jersey as opposed to the Southern District of New York, or whom the Court could not compel to testify if they were unwilling to appear in the Southern District of New York. *See Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 479 (S.D.N.Y. 2006) (Sweet, J.). Third, Plaintiff argues that many of the transactions that allegedly violated Plaintiff's trademark took place within the Southern District of New York. (Opp'n to MTD at 15−16 (Doc. No. 31)). Thus, a significant locus of operative facts is in the Southern District, which weighs in favor of maintaining this venue. *See Am. Eagle Outfitters*, 457 F. Supp. at 477. Finally, Defendants have not shown that litigating in the Southern District of New York would be unduly burdensome in comparison to litigating in the District of New Jersey. *See NBA Props., Inc. v. Salvino, Inc.*, 2000 WL 323257, at *8 (S.D.N.Y. Mar. 27, 2000) (Schwartz, J.).

Accordingly, the balance of factors and the interest of justice militate in favor of maintaining the action in this District. The Court denies Moving Defendants' Motion to Dismiss for *Forum non Conveniens*. The Court also finds that transfer of the case pursuant to 28 U.S.C. § 1404(a) is not warranted.

## IV. MOTION TO RELEASE FROZEN FUNDS

Next, Moving Defendants ask this Court to revisit the Preliminary Injunction. (Mot. to Release at 5−8). Moving Defendants challenge the Preliminary Injunction by merely reciting the standard that this Court used and disagreeing with this Court's analysis. The Court denies the Moving Defendants' motion for the following reasons: (1) the Moving Defendants fail to present the Court any new evidence to show that the PI Order should be amended, vacated, or reconsidered, or any new or binding decisions to challenge the Court's decision in the PI Order; (2) Plaintiff has demonstrated irreparable harm, a likelihood of success on the merits, and that the balance of hardships tips in Plaintiff's favor—which Moving Defendants fail to rebut; (3) Plaintiff did not unreasonably delay in bringing this action; (4) the Court has the authority to freeze Moving Defendants' assets; (5) the Moving Defendants fail to meet their burden to show that the Asset Freeze Order should be lifted, or otherwise modified, because the Moving Defendants have not demonstrated that the frozen funds are unrelated to the alleged sale of counterfeit products; and (6) the Moving Defendants fail to show that the bond posted by Plaintiff in connection with the Preliminary Injunction is inadequate.

### A. No Significant Change in Facts or Law

In the Second Circuit, the burden on a party seeking to modify a preliminary injunction remains unclear. *Lawsky v. Condor Capital Corp.*, 2014 WL 3858496, at *5 (S.D.N.Y. Aug. 1, 2014) (McMahon, J.). Several district courts in this Circuit, as well as other Courts of Appeals, have modified a preliminary injunction only when it is "justified by a 'significant change in facts or law.'" *Id.*, quoting *Favia v. Indiana Univ. of Pennsylvania,* 7 F.3d 332, 341 (3d Cir. 1993),

and *Concilio de Salud Integral de Loiza, Inc. v. Perez–Perdomo,* 551 F.3d 10, 16 (1st Cir. 2008). This Court will apply this same standard.

The Court based its PI Order on evidence proffered by the Plaintiff, that showed that the Defendants are involved in the sale of counterfeit Copper Fit products. No named Defendant appeared at the Order to Show Cause hearing to contest this Court's issuance of a Preliminary Injunction, despite receiving notice of it, and provided the Court with no evidence to dispute Plaintiff's allegations. Moving Defendants failed to comply with the Court's Order to produce, within 14 days, evidence regarding their identity, and the scope and extent of the counterfeiting activities. (*See* Opp'n to Mot. to Release at 5). To date, Moving Defendants have still not provided any credible evidence that they have not sold counterfeit Copper Fit products.[1]

Thus, Moving Defendants have not set forth—either in the Motion to Release Frozen Funds, or beforehand—any "significant change in facts or law," *Lawsky*, 2014 WL 3858496, at *5, which is required for this Court to vacate or amend the PI Order. Nor have the Moving Defendants brought forth any "controlling decisions or factual matters," that had the Court considered, "might have reasonably altered the result before the [C]ourt," *Range Rd. Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 392 (S.D.N.Y. 2000) (Sprizzo, J.) (quoting *Yurman Design Inc. v. Chaindom Enterp., Inc.,* 2000 WL 217480, at *1 (S.D.N.Y. Feb. 22, 2000) (Keenan, J.), *aff'd sub nom. Yurman Design, Inc. v. Chaindom Enterprises, Inc.*, 4 Fed. App'x 48 (2d Cir. 2001). Alternatively, Moving Defendants could have attempted to demonstrate "the need

---

[1] Three individual Moving Defendants submitted self-serving declarations simply denying involvement, without providing supporting evidence. (*See* Attachments to Doc. No. 37).

6

to correct a clear error or prevent manifest injustice," but they have not done so. *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999) (Sweet, J.).

As discussed *infra*, Moving Defendants fail to demonstrate that the Court clearly erred or effected an injustice by issuing the Preliminary Injunction.

### B. Balance of Factors Weighs in Favor of Plaintiff

In order to obtain a preliminary injunction, a plaintiff must establish a likelihood of success on the merits, a likelihood that the plaintiff will suffer irreparable harm in the absence of an injunction, that the balance of equities tips in the plaintiff's favor, and that such an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.,* 129 S. Ct. 365, 374 (2008). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 376.

The Second Circuit allows parties to obtain a preliminary injunction by demonstrating: (1) "the likelihood of irreparable injury in the absence of such an injunction," and (2) either "(a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 242 (2d Cir. 2009).

Plaintiff is entitled to the Preliminary Injunction under either standard. Plaintiff has demonstrated that it will suffer irreparable harm to its Copper Fit trademark in the absence of a preliminary injunction; that Plaintiff has a likelihood of success on the merits; and that the public interest and balance of hardships favor preserving the Preliminary Injunction.

1. <u>Irreparable Harm to Plaintiff</u>

This Court finds that Plaintiff has made a thorough showing, through declarations supported by evidence, that Moving Defendants' conduct will cause irreparable harm, if they are not enjoined immediately. Plaintiff established that Moving Defendants' counterfeit products: (1) are virtually indistinguishable from or substantially similar to Plaintiff's Copper Fit products; (2) are sold at prices significantly below the market prices for Plaintiff's products; and (3) when sold by Moving Defendants, damaged Plaintiff's reputation for providing high-quality products. (*See* Lombardo Dec. ¶ 25). Plaintiff has demonstrated that Moving Defendants' counterfeiting and infringement have caused and will continue to cause Plaintiff irreparable injury in the form of lost sales, loss of pricing power, loss of control of its reputation, and potential exposure to legal liability for any injury to consumers from using counterfeit products. (*See* Opp'n to Mot. to Release at 9). Thus, the Court issued the PI Order to stop Moving Defendants' infringement of Plaintiff's Copper Fit products—not, as Moving Defendants assert, because of "[D]efendants' status as Chinese nationals."

2. <u>Plaintiff's Likelihood of Success on the Merits</u>

Because Plaintiff has demonstrated that Moving Defendants are involved in the sale of counterfeit Copper Fit products, the burden shifts to the Moving Defendants to "disprov[e] consumer confusion as the use of a counterfeit is equated with the infringer's intent to confuse the public." *Romag Fasteners, Inc. v. Fossil, Inc.*, 979 F. Supp. 2d 264, 280 (D. Conn. 2013) (Young, J.); *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 433 (S.D.N.Y. 2012) (Engelmayer, J.).

Moving Defendants have not offered any evidence that the products they sold were not counterfeit, or that they were not sold with an intent to confuse the public. In fact, Plaintiff's evidence clearly shows that Moving Defendants were aware of the counterfeit nature of their products, because they used images of Plaintiff's authentic Copper Fit products to advertise their counterfeit products online. (*See* Complaint ¶ 63; Wiser Dec. Ex. A). "[C]ounterfeits, by their very nature, cause confusion," *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) (Marrero, J.). The evidence demonstrates Plaintiff's likelihood of success on the merits of its trademark infringement claims. Moving Defendants have failed to refute this.

3. <u>Balance of Hardships, Public Interest Tilt Toward Plaintiff</u>

Plaintiff has clearly identified the hardships that it will face, in the absence of the Preliminary Injunction, including: "the destruction of the inherent value of Plaintiff's Copper Fit [products]; the impairment of Plaintiff's reputation for providing quality products; the dilution of Plaintiff's brand and goodwill; the negative impact on Plaintiff's relationships with its licensees and current customers; Plaintiff's loss of control over the reputation of its Copper Fit [products]; and the denial of Plaintiff's fundamental right to control the quality of the goods sold under its Copper Fit" products. (Opp'n to Mot. to Release at 13).

Where the only hardship to the Moving Defendants from this Preliminary Injunction would be to prevent the Moving Defendants "from engaging in further illegal activity," the balance of hardships clearly tips in Plaintiff's favor. *N. Atl. Operating Co. v. Evergreen Distribs., LLC*, 2013 WL 5603602, at *13 (E.D.N.Y. Sept. 27, 2013) (Scanlon, M.J.).

Additionally, the public interest is served by preventing sellers from offering and inserting counterfeit goods into the marketplace, and from infringing registered trademarks. "[T]he public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *Diesel S.P.A. v. Does*, 2016 WL 96171, at *10 (S.D.N.Y. Jan. 8, 2016) (Wood, J.).

### C. Unreasonable Delay or Laches

Moving Defendants argue that Plaintiff unreasonably delayed bringing this action after it inspected Defendants' websites and became suspicious of the counterfeit products. (Mot. to Release at 6). They argue that such a delay, of several months, constitutes laches, and "is grounds for denying equitable relief." (*Id.*). The Court finds that Plaintiff did not unreasonably delay in bringing this lawsuit.

To prevail on a defense of laches, Moving Defendants must prove that they have been prejudiced by Plaintiff's alleged delay. *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192 (2d Cir. 1996). Additionally, where the delay in asserting Plaintiff's intellectual property rights is unreasonable, "a Court may, in its discretion, deny the injunctive relief sought." *CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 161−62 (E.D.N.Y. 2011) (Mauskopf, J.) (citing *King v. Innovation Books*, 976 F.2d 824, 831 (2d Cir. 1992)). Various courts in this Circuit have found that delay was justified where: (1) the plaintiff was ignorant of the defendant's competing product; or (2) the plaintiff made a good faith effort to investigate the alleged infringement. *Marks Org., Inc. v. Joles*, 784 F. Supp. 2d 322, 333 (S.D.N.Y. 2011) (Wood, J.) (quoting *Tough Traveler, Ltd. v. Outbound Prod.*, 60 F.3d 964, 968 (2d Cir. 1995)).

10

In August of 2016, Plaintiff hired New Alchemy Limited ("NAL"), a trademark infringement research service, to investigate sellers of counterfeit versions of Copper Fit. (Complaint ¶ 53). After receiving the evidence relating to the counterfeit Copper Fit products at issue, Plaintiff immediately initiated this lawsuit. Given Plaintiff's bona fide effort to investigate the alleged infringement for three months, and given Moving Defendants' failure to allege any prejudice they have suffered as a result of the lapse of three months, this Court finds that Plaintiff's conduct did not constitute laches, or unreasonable delay, warranting a modification of the Preliminary Injunction. *See CJ Prods*, 809 F. Supp. 2d at 162; *see also King*, 976 F.2d at 832.

### D. Authority to Freeze Assets Abroad

Moving Defendants contend that foreign banks are not subject to the jurisdiction of this Court. (Mot. to Release at 8). However, the Second Circuit has held that a district court needs only personal jurisdiction over a defendant to restrain or freeze that defendant's property before trial, whether that property is within the United States or outside. *See Gucci Am. v. Bank of China*, 768 F.3d 122, 129 (2d Cir. 2014) (quoting *United States v. First Nat'l City Bank*, 379 U.S. 378, 384 (1965)). Because this Court has personal jurisdiction over Moving Defendants,[2] they are mistaken that this Court lacks the authority to issue the Asset Freeze Order over funds in Moving Defendants' Chinese bank accounts.

---

[2] Moving Defendants have appeared in this Court and have waived any defense of lack of personal jurisdiction "by failing timely to raise the defense in its initial responsive pleading." *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 134 (2d Cir. 2011); *see also* Fed. R. Civ. P. 12(h).

### E. Moving Defendants' Wrongfully-Derived Profits

Moving Defendants contend that the Asset Freeze Order should be lifted, without demonstrating that their assets are not wrongfully derived from the sale of counterfeit Copper Fit products, and without showing that they would not hide or dissipate these profits. To lift the Asset Freeze Order, the burden is on Moving Defendants to "present documentary proof that particular assets are not the proceeds of counterfeiting activities." *N. Face Apparel Corp. v. TC Fashions, Inc.*, 2006 WL 838993, at *3 (S.D.N.Y. Mar. 30, 2006) (Berman, J.).

Despite the Moving Defendants' declarations in which they deny selling counterfeit Copper Fit products, the evidence Plaintiff submitted with the Complaint shows the falsity of those declarations. Plaintiff submitted evidence that all Moving Defendants offered to sell counterfeit products to NAL. (*E.g.*, Wiser Dec. Ex. B). Because Moving Defendants have not offered evidence that the assets frozen are not the result of the sale of counterfeit Copper Fit products, Moving Defendants have failed to meet their burden. Thus, the Court will not lift or modify the Asset Freeze Order.

### F. Plaintiff Posted Adequate Bond

Finally, as required by the PI Order, Plaintiff posted a $5,000 bond with the Court. (PI Order at ¶ 12). Moving Defendants argue that this bond is inadequate, and if the Asset Freeze Order is not lifted, the bond must be increased. To do so, Moving Defendants must first establish a rational basis for the amount of the proposed bond, but they do not propose a bond amount. *See Int'l Equity Investments, Inc. v. Opportunity Equity Partners Ltd.*, 441 F. Supp. 2d 552, 566 (S.D.N.Y. 2006) (Kaplan, J.), *aff'd*, 246 F. App'x 73 (2d Cir. 2007).

Moving Defendants have presented no evidence of damages they may suffer if the Preliminary Injunction is later found to be wrongfully issued. Instead, Moving Defendants conclusorily assert that their businesses have been shut down and their reputation with PayPal has been compromised. (Mot. to Release at 8–9). Moving Defendants offer buyers means of payment other than PayPal, and their declarations show that they are not completely reliant on the Alibaba storefronts as a source of income. This undercuts Moving Defendants' argument that the Preliminary Injunction will render Moving Defendants unable to "make a living." (Mot. to Release at 8). Accordingly, Moving Defendants fail to show a likelihood of harm that would warrant an increase in bond.

## V. CONCLUSION

For the foregoing reasons, this Court DENIES the Motion to Dismiss for *Forum non Conveniens* and DENIES the Motion to Release Frozen Funds.

This resolves docket numbers 29 and 36.

SO ORDERED.

Dated: New York, New York
      April 21, 2017

/s/
KIMBA M. WOOD
United States District Judge